ASSESSORS OF BOSTON *vs.* BOSTON, REVERE BEACH AND LYNN RAILROAD COMPANY.

Suffolk.    January 8, 1946. — March 29, 1946.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Taxation*, Real estate ˙tax: exemption, ferry; Appellate Tax Board: decision.    *Railroad*, Taxation.    *Ferry.    Public Utilities.    Boston, Revere Beach and Lynn Railroad Company.*

A decision of the Appellate Tax Board correct on the record will be sustained even though the ground of decision stated by the board be wrong.

Real estate in Boston proper, acquired by the Boston, Revere Beach and Lynn Railroad Company under the authority of St. 1874, c. 160; St. 1888, c. 294, and used by it for a terminal of its ferry plying across Boston Harbor to and from the terminal of its railroad in East Boston, was not acquired "for railroad, depot or station purposes" within G. L. (Ter. Ed.) c. 160, § 87, nor was such real estate within the location of the railroad, and said § 87 was not applicable in determining whether the real estate was exempt from taxation.

The principle, that land, taken by eminent domain or purchased for public purposes by a public service corporation having the right so. to take it, and used by the corporation for such purposes, is exempt from taxation, was applicable to real estate in Boston proper taken or purchased by the Boston, Revere Beach and Lynn Railroad Company for ˋ ferry terminal purposes under the authority of St. 1874, c. 160; St. 1888, c. 294, and used for such purposes.

APPEAL from a decision by the Appellate Tax Board.

*J. W. Kelleher*, Assistant Corporation Counsel, for assessors of Boston.

*G. K. Gardner*, for the taxpayer.

WILKINS, J.    This is an appeal by the board of assessors of Boston from a decision of the Appellate Tax Board

abating a tax assessed for the year 1940 on real estate acquired and operated by the taxpayer for ferry purposes.

The Appellate Tax Board, in accordance with a stipulation of agreed facts, made these findings. The real estate consisted of a ferry slip with appurtenances and covered an area of nine thousand seven hundred twenty-eight square feet, on which stood a two-story brick and granite ferry station. The real estate, with frontages on Atlantic Avenue and on the harbor of fifty-six feet and sixty-two feet respectively, was acquired in part by a taking under St. 1874, c. 160, in part by a taking under St. 1888, c. 294, and in part by deed in 1889. Until the tax in question was assessed on December 20, 1940 (see G. L. [Ter. Ed.] c. 59, § 75), no assessment of any real estate tax was ever made with respect to the property, which had been uninterruptedly used for ferry purposes since the dates of acquisition of the respective parcels. There were at no time cars or tracks used for the transportation of persons or freight on the property. Tickets between Boston and East Boston good for ferry passage only were sold, but purchasers of such tickets formed but a small percentage of the total number travelling to or from Boston by the ferry and railroad cars operated by the taxpayer. The taxpayer was incorporated in 1874 under the provisions of St. 1872, c. 53 (see now G. L. [Ter. Ed.] c. 160), and is subject to taxation under the provisions of G. L. (Ter. Ed.) c. 63, §§ 53–58.

The conclusions of the board and the general finding for the taxpayer must stand so far as warranted by the facts agreed and not necessarily inconsistent. *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 384. See G. L. (Ter. Ed.) c. 58A, § 13, as amended. A correct decision will be sustained even though the ground stated for it may be unsound. *Nickerson* v. *Allen,* 293 Mass. 136, 138–139. *Ryder* v. *Warren,* 295 Mass. 24, 29. *Cousbelis* v. *Alexander,* 315 Mass. 729, 732.

The board's decision in substance was that "the real estate in question was within the location of the railroad, and being less than five rods in width, was exempt from taxation." This was in stated conformity with G. L. (Ter.

Ed.) c. 160, § 87, which reads: "Land, outside the location of the railroad five rods in width, taken or purchased for railroad, depot or station purposes shall not be exempt from taxation." The assessors contend that § 87, on the contrary, requires the conclusion that the real estate was not exempt from taxation. The real estate, however, was not "taken or purchased for railroad, depot or station purposes," but was taken or purchased for ferry purposes. This is clear from the pertinent statutes. It was provided in St. 1874, c. 160: § 1. "The Boston, Revere Beach and Lynn Railroad Company may establish and support a ferry in connection with their railroad, which shall be located from the terminus of their railroad in East Boston to Boston proper . . .." § 2. "Said company may purchase or otherwise take any land necessary for the purpose of said ferry . . .." In St. 1888, c. 294, it was provided: "§ 1. "The Boston, Revere Beach and Lynn Railroad Company for the purpose of increasing its terminal facilities on Atlantic avenue in the city of Boston may purchase or take so much of that parcel of land . . .."[1] The Legislature having described East Boston as the terminus of the railroad, the "terminal facilities on Atlantic avenue" must necessarily have been ferry terminal facilities. This view is confirmed by an examination of the provisions of Gen. Sts. c. 63, §§ 19, 20, and Pub. Sts. c. 112, §§ 91, 92, in force respectively in 1874 and 1888, enabling a railroad to acquire land "for the purpose of making or securing its road" and for depot and station purposes, in the light of which no necessity is apparent for the passage of the two special acts if their purposes were already covered by general acts. Moreover, the actual use of the real estate bore no resemblance to railroad operation. There were upon it neither tracks nor cars. To be sure, tickets were sold which were good on the railroad trains on the other side of the harbor, but tickets were also sold which were good only for passage by ferry.

---

[1] The habendum clause of the deed of 1889, by which the remainder of the real estate was purchased, read, "To have and to hold . . . under the same limitations, upon the same tenure and for the same purposes of the land heretofore taken by said corporation for the purpose of a ferry, under Chap. 160, Acts 1874."

From what has been said it is also apparent that the real estate was not within the location of the railroad, and the reason of the board for its conclusion cannot be upheld. Nor is this a case of real estate continuous with the end of the railroad and taken for station purposes, which would be liable to taxation. *Norwich & Worcester Railroad* v. *County Commissioners of Worcester*, 151 Mass. 69, 70. It is not argued by anyone that *Brownell* v. *Old Colony Railroad*, 164 Mass. 29, 31, is applicable to the case at bar.

The conclusion of the board that the real estate is not taxable may be sustained upon the principle that "where land is taken (or purchased when it could have been taken) and held for a public purpose, it shall be exempt from taxation in the absence of any express statutory provision to the contrary." *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, 495. This doctrine was first expressed in this Commonwealth by Chief Justice Shaw in *Worcester* v. *Western Railroad*, 4 Met. 564. It has been frequently recognized. *Boston & Maine Railroad* v. *Cambridge*, 8 Cush. 237, 238. *Wayland* v. *County Commissioners of Middlesex*, 4 Gray, 500, 501. *Worcester County* v. *Mayor & Aldermen of Worcester*, 116 Mass. 193. *Boston & Maine Railroad* v. *Lowell & Lawrence Railroad*, 124 Mass. 368. *Boston* v. *Boston & Albany Railroad*, 170 Mass. 95, 98–99. *Connecticut Valley Street Railway* v. *Northampton*, 213 Mass. 54. See *Collector of Taxes of Milton* v. *Boston*, 278 Mass. 274, 277. "And this implied exemption extends to real estate held by a public service corporation having the right to take such real estate by eminent domain for public purposes and using it for such purposes. 'It is the character of the use to which the property is put, and not of the party who uses it, that settles the question of exemption from taxation.' *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, 495–497." *Assessors of Quincy* v. *Cunningham Foundation*, 305 Mass. 411, 417. "Only such land is exempt as the corporation has taken by right of eminent domain, or, having the right so to take, has purchased. In other words this right of exemption from taxation is coextensive with the right to take by eminent domain. . . . This exemption is not founded upon any

express language of the tax acts, but upon judicial construction of them as dictated by considerations of justice and expediency." *Connecticut Valley Street Railway* v. *Northampton,* 213 Mass. 54, 58.

As we have seen, the real estate was not taxable under G. L. (Ter. Ed.) c. 160, § 87. Nor does the language of G. L. (Ter. Ed.) c. 59, § 5, as appearing in St. 1936, c. 362, § 1, destroy the effect of the ruling laid down in *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491.

We conclude that the innovation of the assessors in taxing the real estate in 1940 was not authorized by any statute. It follows that abatement is granted in the amount of the tax with interest at the rate of four per cent per annum from the dates of payment, namely, on $2,224.41 from August 6, 1941, and on $2,255.17 from December 16, 1941, together with the costs of this appeal. See St. 1939, c. 366, § 1.

*So ordered.*