GEORGIA A. COBB *vs.* OLD COLONY TRUST COMPANY & others.

Norfolk.     January 15, 1936. — September 9, 1936.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Adoption.   Conflict of Laws.   Words,* "In conflict with," "Inconsistent with."

Under the provisions of G. L. (Ter. Ed.) c. 210, § 9, a child, adopted "without the rights of inheritance" by decree of a court of competent jurisdiction of another State and according to a governing statute of that State, had no right of inheritance here from the adopting parent, although after the adoption the parent and child had become domiciled here.

PETITION, filed in the Probate Court for the county of Norfolk on June 1, 1935, for leave to intervene in the matter of the probate of the will of Hattie E. Witham, late of Brookline.

There was a reservation and report by *McCoole,* J.

*T. Weston,* (*F. M. Sears, Jr.,* with him,) for the petitioner.

*A. S. Allen,* (*O. S. Allen* with him,) for the respondent Old Colony Trust Company.

*C. W. Morrill,* for the respondents W. Stuart Forbes, Jr., and another, submitted a brief.

RUGG, C.J.   The Old Colony Trust Company has filed a petition praying for the allowance of the last will of Hattie E. Witham, deceased, late a resident of Brookline in

this Commonwealth, and alleging that her only heir at law
is a daughter, Marion K. McAlister of Marblehead in this
Commonwealth. (The surname is thus spelled in this peti-
tion, and that spelling will be followed in this opinion al-
though in the last will and elsewhere in the record it is
McAlester.) The present controversy arises on a petition
brought by Georgia A. Cobb, alleging that she is a sister
and one of the heirs at law of said deceased, that the person
described in the petition for the allowance of said will as
daughter and only heir at law of the deceased is not one of
her heirs at law, and that the deceased at the time of the
execution of the instrument purporting to be her last will
was of unsound mind and "was unduly influenced in the
making of said will in favor of the said Marion K. McAl-
ester." The prayers are that she may be allowed to inter-
vene in the petition for the allowance of said will, and that
a decree be entered declaring that the person described in
that petition as daughter and heir at law of the deceased is
not one of her heirs at law, and declaring that said Georgia
A. Cobb and three others are the only heirs at law of said
deceased. The essential facts were agreed upon and no
oral testimony was introduced. The trial judge reserved
and reported the matter upon the pleadings and facts for
the determination of this court. G. L. (Ter. Ed.) c. 215,
§ 13.

The deceased with her husband lived in Bangor in the
State of Maine prior to 1905. They petitioned a court of
competent jurisdiction in that State, in accordance with its
statute, for leave to adopt a child about three years old
"without the rights of inheritance, as provided by law."
Pursuant to that petition a decree was entered on October
26, 1897, to the effect that from the date thereof "said child
is the child of said petitioners, with all rights except the
rights of inheritance," and that her name be changed to
Marion Katherline Witham as prayed for. In 1905 or 1906,
Mr. and Mrs. Witham and their adopted daughter moved
to this Commonwealth and were domiciled here until the
death of the husband in 1925, and that of his wife, the
deceased, in April, 1935. The adopted daughter at some

time prior to the death of the deceased married and her name became Marion K. McAlister. The decree of adoption was in conformity to the governing statute of Maine in force at that time, which provided so far as here material that by a decree of adoption the child became "to all intents and purposes, the child of his adopters, the same as if born to them in lawful wedlock, except that he shall not inherit property expressly limited to the heirs of the body of the adopters . . . and provided, that the right of inheritance only applies to adoptions made since February twenty-four, eighteen hundred and eighty, and where not otherwise expressly provided in the decree of adoption." Rev. Sts. of Maine (1883) c. 67, § 35, as amended by Laws of 1891, c. 78. See now Rev. Sts. of Maine (1930) c. 80, § 38. Thus it appears that the decree of adoption by its terms in accordance with a provision of the controlling statute excluded the adopted child whose rights are here in issue from the right to inherit from her parents.

The question to be decided is the effect upon the rights of inheritance of the adopted daughter, Mrs. McAlister, in the estate of her adopting mother of the restrictive words of the Maine decree, founded on a controlling statute, that she became the child of the adopting parents "with all rights except the rights of inheritance."

The right of adoption was unknown to the common law. It is wholly the creature of statute. The effect of adoption upon the status of the parties and upon the rights of descent and distribution of their property in case of intestate death is governed by statute. "The law of the domicil of the parties is generally the rule which governs the creation of the status of a child by adoption." *Ross* v. *Ross,* 129 Mass. 243, 265. Plainly, at the time of the adoption in the case at bar, the adopting parents and the adopted child were domiciled in Maine. Their respective rights then were governed by the terms of the decree of adoption. Those terms are not open to doubt. All the parties subsequently removed to this Commonwealth, and the domicil of the deceased at the time of her death was here. "It is a general principle, that the status or condition of a person, the rela-

tion in which he stands to another person, and by which he is qualified or made capable to take certain rights in that other's property, is fixed by the law of the domicil; and that this status and capacity are to be recognized and upheld in every other State, so far as they are not inconsistent with its own laws and policy. Subject to this limitation, upon the death of any man, the status of those who claim succession or inheritance in his estate is to be ascertained by the law under which that status was acquired; his personal property is indeed to be distributed according to the law of his domicil at the time of his death, and his real estate descends according to the law of the place in which it is situated; but, in either case, it is according to those provisions of that law which regulate the succession or the inheritance of persons having such a status." *Ross* v. *Ross*, 129 Mass. 243, 246.

It is necessary, therefore, to examine the statutes of this Commonwealth regulating rights of inheritance by adopted persons, in order to determine the rights of Mrs. McAlister in the estate of the deceased. The provisions of G. L. (Ter. Ed.) c. 210, § 7, relate exclusively to the rights of persons "adopted in accordance with this chapter." Those words, in the connection in which they stand, show that the General Court "had solely in view adoption by or of inhabitants of this Commonwealth, and did not intend either to regulate the manner, or to define the effects, of adoption by and of inhabitants of other States according to the law of their domicil." *Ross* v. *Ross*, 129 Mass. 243, 267. Manifestly this section has no bearing upon the questions here to be decided because the adoption was decreed in Maine where all the parties were then inhabitants. The provisions of said § 7 refer to adoptions within and in conformity to the laws of this Commonwealth.

The words of G. L. (Ter. Ed.) c. 210, § 9, are these: "An inhabitant of another state, adopted as a child in accordance with the laws thereof, shall upon proof of such fact be entitled in this commonwealth to the same rights of succession to property as he would have had in the state where he was adopted, except so far as such rights are in conflict with this

chapter." The structure of this section is significant. It invokes the law of the foreign State as the measure of the "rights of succession to property," but prohibits under the exception "such rights" as are in conflict with said c. 210. It purports to confer rights but to leave out and exclude specified classes of rights. By the fair interpretation of its words, that section grants no rights of succession to property not enjoyed by the adopted person under the laws of the State where he was adopted. It does not remove or extinguish limitations or inhibitions upon the rights of succession to property imposed by the laws of the State where he was adopted. It leaves those limitations or inhibitions as established by the laws of that State in full force and effect. An exception does not naturally bestow rights or privileges: it states restrictions or restraints. No provision in the statutes of this Commonwealth makes any change in the status of the adopting parents and the adopted child upon removal here from a foreign State. The exception in said § 9 has ample scope for operation in cutting down larger rights to succession to property conferred by the law of the State where the person was adopted than are permitted here. For example, if the law of the State of adoption gave an adopted child the right to inherit from collateral kindred of the adoptive parents, that would be in clear conflict with G. L. (Ter. Ed.) c. 210, § 7, and could not be given effect. The contention that the words "in conflict with" in said § 9 mean only "inconsistent with" cannot be supported. In substance the result of such construction would be that the person described in § 9 would inherit on the same footing as a person adopted in this Commonwealth. Such a purpose cannot be imputed to the General Court. If that result had been intended, simple and direct words declaring that persons adopted in foreign States should have the same rights of succession to property as those adopted here would naturally have been chosen. To reach the result urged would involve a strained and unnatural construction of said § 9, and one at variance with established canons of statutory interpretation. The correct construction of said § 9 is that the inhabitant of another State adopted in accordance with

its laws is not entitled to greater rights of succession than are given by its laws, and is not entitled to greater rights of succession than are given by the laws of this Commonwealth. See *Ross* v. *Ross*, 129 Mass. 243, 268; *Nickerson* v. *Allen*, 293 Mass. 136, 137.

Thus our statutes make complete provision for the succession to property by adopted persons. By § 7 of G. L. (Ter. Ed.) c. 210, the rights of succession of persons adopted within and in conformity to the laws of this Commonwealth are regulated; by § 9 the rights of succession of persons resident in and adopted according to the laws of another State are regulated.

The entire field of rights of succession of a person adopted as was Mrs. McAlister, in the estates of the adopting parents under the circumstances disclosed on this record, is covered by the provisions of G. L. (Ter. Ed.) c. 210, §§ 7, 9. The State of the domicil of the deceased parent "is sole mistress of the devolution" of property within her borders and may regulate rights of succession. *Hood* v. *McGehee*, 237 U. S. 611, 615.

The terms of G. L. (Ter. Ed.) c. 210, §§ 7, 9, are quite different from those under consideration in numerous cases which have arisen in other jurisdictions concerning the rights of adopted persons to inherit from adopting parents. Therefore it is not necessary to examine them or to discuss the various points there adjudicated. *Slattery* v. *Hartford-Connecticut Trust Co.* 115 Conn. 163. *Anderson* v. *French,* 77 N. H. 509. *Estate of Riemann*, 124 Kans. 539. *Shick* v. *Howe*, 137 Iowa, 249. *Woodward's Appeal*, 81 Conn. 152. *Estate of Finkenzeller*, 105 N. J. Eq. 44. See *Brewer* v. *Browning*, 115 Miss. 358; *Shaver* v. *Nash*, 181 Ark. 1112.

The conclusion is that, according to the true interpretation of the governing statutes of this Commonwealth, Mrs. McAlister is not entitled to any rights of succession to the property of the deceased. In that event it is conceded that the next of kin and heirs at law of the deceased are correctly described in the petition to intervene. It follows that the several prayers of the petition to intervene in

substance ought to be allowed. Decree is to be entered accordingly, but without costs, the details of which are to be settled in the Probate Court.

*Ordered accordingly.*